**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3102
_____

LHAMU CHHOTI LAMA SHERPA,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Appeal for Review of an Order of the
Board of Immigration Appeals
(Agency No. A200-731-829)
Immigration Judge: Charles M. Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 17, 2015

Before: SMITH, JORDAN and VAN ANTWERPEN, *Circuit Judges*.

(Opinion Filed: March 18, 2015)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VAN ANTWERPEN, *Circuit Judge*.

Petitioner Lhamu Chhoti Lama Sherpa ("Sherpa") filed this Petition for Review of the decision of the Board of Immigration Appeals, dated May 28, 2014, affirming an Immigration Judge's July 24, 2012 denial of her applications for political asylum, withholding of removal, and protection under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). Because substantial evidence supported the Immigration Judge's finding that petitioner was not credible, we will deny the Petition for Review.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because we write only for the parties, we will only set forth the facts necessary to inform our analysis. This appeal arises from events beginning in May of 2004. At that time, Sherpa—a native and citizen of Nepal—operated Echo Trekking Business Pvt. Ltd. ("Echo Trek"), a profitable trekking and mountaineering business in Kathmandu. Sherpa operated the business with her husband, Ngima Nurbu Sherpa. While Echo Trek's customer base primarily consisted of foreigners, Sherpa also provided training to members of the Nepal Army. In the off season, Sherpa worked as an informal advisor for the Nepali Congress Party ("NCP").

The following description of the events leading up to Sherpa's departure from Nepal for the United States in 2009 is based upon Sherpa's account of those events. On May 3, 2004, two Maoists visited Echo Trek and handed Sherpa a letter demanding that she provide them with 500,000 rupees and mountain climbing training. She refused to comply with either request. Sherpa did not interact with the Maoists again until May 24,

2

2005, when three armed Maoists visited Echo Trek. Several Echo Trek employees, including Sherpa's husband, were present during this visit. The Maoists again demanded money and training of Sherpa. Sherpa retreated to the back of the Echo Trek building under the guise of preparing to comply with the Maoists' request. She actually snuck out of the back of the building and fled to her home. The Maoists did not pursue Sherpa, nor did they question her employees or husband any further. The Maoists did not visit Echo Trek again until 2008.

In August of 2007, Sherpa became the NCP Advisor for the Solokhumbu District. As part of that role, she attended a political rally on March 26, 2008. Maoists attacked the rally. Sherpa, along with several other NCP members, sustained minor injuries in the attack. She received medical treatment but returned to campaigning the next day. Several months later, on August 16, 2008, fifteen Maoists came to Echo Trek to deliver a threatening letter to Sherpa and to seize the business. One month later, Sherpa observed a local Maoist leader watching her residence. Sherpa then fled to the home of her uncle in Gokarna, Nepal.

On November 4, 2008, Maoists visited Sherpa's uncle's home in Gokarna, looking for Sherpa. They questioned her uncle and slapped him twice. Sherpa then left her uncle's house to stay with her sister-in-law, Doma Sherpa, in Jorpati, Nepal. On March 3, 2009, five Maoists—again, looking for Sherpa—returned to Sherpa's uncle's home in Gokarna. After learning of that visit, Sherpa decided to leave Nepal. She entered the United States

on May 9, 2009.[1] Her husband and the couple's child remained in Nepal. She was authorized to remain in the United States until August 6, 2009. She remained in the country after the expiration of her lawful status and filed for asylum on April 21, 2010.

On May 20, 2010, the Department of Homeland Security ("DHS") determined that Sherpa was not eligible for asylum. DHS commenced removal proceedings against her on June 21, 2010. DHS charged Sherpa with removability under 8 U.S.C. § 1227(a)(1)(B). Sherpa conceded her removability but filed claims for asylum, withholding of removal, and protection under CAT. A merits hearing to evaluate Sherpa's application was held in front of an Immigration Judge ("IJ") in 2012. The IJ issued a decision finding Sherpa removable on July 24, 2012. The IJ denied Sherpa's applications for asylum, withholding of removal, and protection under CAT.

The IJ found that Sherpa's testimony was not credible. Specifically, the IJ found that Sherpa's testimony regarding the events leading up to her departure from Nepal and her procurement of a February 20, 2009 letter from the NCP District Chairman was implausible and therefore not credible. The IJ also found internal inconsistencies between Sherpa's testimony at the merits hearing and her own sworn statements and documentary evidence. The IJ also noted that inconsistencies in letters from Sherpa's husband and neighbor called into question the reliability and authenticity of that evidence. Finally, the IJ found that Sherpa failed to present sufficient corroborating evidence—namely, statements from certain of her friends, family members, and former employees—to

---

[1] Sherpa traveled to the United States pursuant to a tourist visa issued to her by the United States embassy in Kathmandu, Nepal.

bolster the portions of her testimony that the IJ found not credible. The IJ also found that it was not unreasonable to expect Sherpa to provide this corroborating evidence.

Alternatively, the IJ found that Sherpa's claims failed on the merits. Specifically, the IJ found that Sherpa failed to meet her burden of establishing past persecution or a well-founded fear of future harm if she were to return to Nepal.

Following the IJ's decision, Sherpa petitioned the Board of Immigration Appeals ("BIA") for review. The BIA dismissed Sherpa's appeal—finding that the IJ's adverse credibility determination was proper and finding no other clear errors in the IJ's decision. This petition followed.

## II.    DISCUSSION[2]

### 1.    Standard of Review

When the BIA issues its own decision—as opposed to a summary affirmance of the IJ's decision—we review that decision. *Sheriff v. Att'y Gen.*, 587 F.3d 584, 588 (3d Cir. 2009). However, "[w]hen the BIA's decision substantially relies upon the decision of the IJ, this court has jurisdiction to consider the IJ's decision, as well as the BIA's decision." *Kaita v. Att'y Gen.*, 522 F.3d 288, 295–96 (3d Cir. 2008) (citing *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004)). Here, the BIA issued its own decision, but it substantially relied on the decision of the IJ. Therefore, both the IJ's and the BIA's decisions are within the scope of our review. *Kaita*, 522 F.3d at 295–96.

___

[2] The BIA had jurisdiction to review the decision of the IJ dated July 24, 2012 pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. This Court has jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a).

This Court reviews legal determinations of the IJ or BIA *de novo*, subject to principles of deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Kaplun v. Att'y Gen.*, 602 F.3d 260, 265 (3d Cir. 2010). We review factual findings, including adverse credibility determinations, under the "substantial evidence" standard. *Xie*, 359 F.3d at 243. Under that standard, we must uphold factual findings unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (quoting 8 U.S.C. § 1252(b)(4)(B) (2012)).

2. *Asylum Claim*

Sherpa first appeals the denial of her petition for asylum. Pursuant to the Immigration and Nationality Act ("INA"), the Attorney General may grant asylum to any person who has established that she is a refugee. 8 U.S.C. § 1158(b)(1)(A) (2012). The INA defines a refugee as an individual outside of her country of nationality who "is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). A refugee can establish eligibility for asylum by showing that (1) she was persecuted in the past on account of a protected characteristic or (2) she has a well-founded fear of future persecution because of a protected characteristic. *Id.;* 8 C.F.R. § 208.13(b).

The applicant bears the burden of establishing that she is a refugee. 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 208.13(a) (2014). This burden may be satisfied by an

6

applicant's *credible* testimony. 8 C.F.R. § 208.13(a). By extension, an adverse credibility finding is sufficient to establish that an applicant failed to satisfy her burden. *In re A-S-*, 21 I. & N. Dec. 1106, 1112 (BIA 1998) ("Because we adopt the [IJ's] well-supported determination that the respondent's testimony cannot be accepted as credible, it follows that the respondent has failed to satisfy his burdens of proof and persuasion."); *see also Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003) ("An alien's credibility, by itself, may satisfy his burden, or doom his claim." (citing *Gao*, 299 F.3d at 272)).

Therefore, in evaluating an individual's application for asylum, the IJ must make a threshold determination of credibility. Section 208(b)(1)(B)(iii) of the INA,[3] provides:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements, . . . the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

"The IJ's overall credibility determination does not necessarily rise or fall on each element of the witness's testimony, but rather is more properly decided on the cumulative effect of the entirety of all such elements." *Jishiashvili v. Att'y Gen.*, 402 F.3d 386, 396 (3d Cir. 2005). The IJ is required to allow the alien to explain any testimonial inconsistencies before it makes its credibility determination. *Caushi v. Att'y Gen.*, 436

---

[3] This provision is part of the REAL ID Act of 2005. It is undisputed that the REAL ID Act applies to Sherpa's current asylum application.

7

F.3d 220, 226 (3d Cir. 2006). The IJ must also delineate the reasoning supporting an adverse credibility finding. *In re A-S-*, 21 I. & N. Dec. 1106, 1109 (BIA 1998). The IJ's articulated reasoning must be supported by evidence in the record. *Dia*, 353 F.3d at 249.

Here, the IJ made an adverse credibility finding, and the BIA agreed with the IJ. At the outset, we note that the IJ clearly explained the reasoning supporting his adverse credibility determination. (IJ[4] at 20–26). He also supported his reasoning with detailed references to evidence in the record—namely, references to inconsistencies and implausibilities contained within Sherpa's testimony and corroborating evidence. (*Id.*).

Nevertheless, Sherpa challenges these adverse credibility findings on appeal, arguing that the IJ's determination was not supported by substantial evidence. She contends that the IJ (1) engaged in impermissible speculation, (2) failed to afford Sherpa the opportunity to explain the discrepancies in her testimony, (3) afforded too much weight to discrepancies that were minor and not central to her claim, and (4) employed faulty reasoning when determining that she lacked certain corroborative evidence. (Appellant Br. at 37–39). We find these arguments unpersuasive.

### A. Impermissible Speculation

Sherpa first argues that the IJ engaged in impermissible speculation because he found her "explanation of why the Maoists did not pursue or punish her after she ignored their 2004 and 2005 requests for a donation and training" to be implausible. (Appellant Br. at 41). We disagree that the IJ made this finding of implausibility based on

---

[4] "IJ" refers to the July 24, 2012 decision of the Immigration Judge in this matter. This decision begins at page 8 of the Appendix to the Appellant's Brief.

speculation alone. Rather, the IJ made that finding after conducting a careful review of Sherpa's testimony and documentary evidence. (IJ at 21–22). The IJ then compared her account of the events to information from Nepal's 2005 country report,[5] noting the inconsistencies that led to his conclusion that her story was implausible. (*Id.* at 22). For example, Sherpa testified that the Maoists did not take any action against her after she ignored their requests for money and training in 2004 and 2005. (*Id.*). However, the 2005 country report on Nepal indicated that the "Maoists responded particularly violently to those who ignored extortive demands in 2005." (*Id.*). Accordingly, we find that the IJ did not make this determination on speculation alone.

### B.        Failure to Allow Sherpa to Explain Discrepancies

Sherpa next argues that the IJ erred in not allowing her to explain certain inconsistencies in her testimony. (Appellant Br. at 38). However, as the BIA noted, the IJ questioned Sherpa regarding the inconsistencies in her testimony. (BIA[6] at 2–3). However, even in response to this questioning, Sherpa was unable to sufficiently explain all of the inconsistencies in her testimony. (*Id.*). Further, even where Sherpa did proffer explanations for the testimony, the IJ is not required to accept those explanations. *See Matter of D-R-*, 25 I. & N. Dec. 445, 455 (BIA 2011) ("An Immigration Judge is not required to accept a respondent's assertions, even if plausible, where there are other

---

[5] The Department of State prepares annual reports detailing the political situation in other countries. The IJ reviewed the Department of State's 2005 Country Report on Nepal in connection with Sherpa's appeal.

[6] "BIA" refers to the May 28, 2014 decision of the Board of Immigration Appeals in this matter. This decision begins at page 3 of the Appendix to the Appellant's Brief.

permissible views of the evidence based on the record." (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985))). We therefore reject this argument.

### C.     Identified Inconsistencies Were Minor

Sherpa next argues that "the factors identified by the IJ and the Board to support the adverse credibility determination were minor and not central to the claim." (Appellant Br. at 39). Again, we disagree. The INA provides that the IJ should assess inconsistencies in an applicant's testimony "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii) (2012). Therefore, Sherpa's argument is unsupported by the statute governing her claim.

Further, the inconsistencies identified by the IJ did go to the heart of Sherpa's claim for asylum. For example, a requisite element of whether an applicant qualifies as a refugee is whether she has a subjective, well-founded fear of future persecution. 8 U.S.C. § 1101(a)(42)(A). To establish that element, Sherpa relied upon a letter from the NCP Chairman that stated that the Maoists posed a threat to Sherpa. (IJ at 22). However, her testimony as to how she acquired that letter was inconsistent. (*Id.*). Further, her ultimate admission that she traveled to a Maoist-controlled village to acquire the letter undercuts her position that she feared the Maoists. (*Id.*). Accordingly, we also reject this argument.

### D.     Lack of Corroboration

Finally, Sherpa argues that the IJ erred in finding that she lacked certain necessary corroborating evidence. (Appellant Br. at 39–40). "[W]here it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided." *In re S-M-J-*, 21 I. & N. Dec. 722,

10

725 (BIA 1997). To determine whether an applicant has provided sufficient corroboration, an IJ conducts a three-step inquiry: (1) identify the facts that the applicant can reasonably be expected to corroborate, (2) inquire whether the applicant has provided necessary corroborating information, and (3) analyze whether the applicant has adequately explained any failure to corroborate. *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001). "The [BIA] has also stated that it is generally reasonable to expect applicants to produce letters from family members remaining in the applicant's home country." *Id.* at 554–55 (citing *In re M-D-*, 21 I. & N. Dec. 1180 (BIA 1998)).

On appeal, Sherpa argues that the IJ inadequately performed this inquiry. Specifically, she argues that (1) the IJ failed to explain why the corroborating evidence he sought would have been readily available and (2) the IJ failed to give her an opportunity to explain why she did not produce this evidence. (Appellant Br. at 52).

We find Sherpa's first argument unpersuasive, as the IJ did explain why the evidence would have been readily available. (IJ at 26). The IJ noted that the documentation he sought primarily consisted of statements from Sherpa's family, friends, and former employees. (*Id.*). The IJ explained that this information should have been accessible, as Sherpa "ought to have been able to request these documents by phone or mail, as Nepal explicitly prohibits interference with the mail system." (*Id.*). We find her second argument similarly unpersuasive, as a review of the record does not show that Sherpa ever attempted to explain why she could not produce these documents. Nor does Sherpa cite a reason for not providing them in her briefs to this Court. Further, the BIA

11

has held that production of the type of documents sought by the IJ in Sherpa's case is reasonable. *Abdulai*, 239 F.3d at 554. We accordingly reject Sherpa's final argument.

We therefore find that the adverse credibility findings by the IJ was supported by substantial evidence. Sherpa has failed to persuade us that "any reasonable adjudicator would be compelled to conclude to the contrary." *Gao*, 299 F.3d at 272 (quoting 8 U.S.C. § 1252(b)(4)(B)). We also find that these adverse credibility determinations are fatal to Sherpa's claim. *Dia*, 353 F.3d at 247. We therefore do not reach the IJ's alternate holding that Sherpa's claims failed on the merits.

### 2.    *Withholding of Removal and CAT*

Sherpa also appeals the decision to deny her request for withholding of removal pursuant to INA § 241(b)(3) and relief under CAT. This Circuit has held that "[s]ince the threshold for asylum is lower than for protection under the withholding of removal or CAT provisions, rejection of the petitioners' asylum claims necessarily requires that their CAT and withholding claims be rejected as well." *Yu v. Att'y Gen.*, 513 F.3d 346, 349 (3d Cir. 2008); *see also In re A-S-*, 21 I. & N. Dec. 1106, 1112 (BIA 1998) ("Inasmuch as the respondent has failed to satisfy the lower burden of proof required for asylum, it follows that he also has failed to satisfy the clear probability standard of eligibility required for withholding of deportation."). We accordingly affirm the decisions of the IJ and BIA to deny Sherpa's request for withholding of removal pursuant to INA § 241(b)(3) and relief under CAT.

### III.    CONCLUSION

For the foregoing reasons, we will affirm.